**Lois PATTERSON, Administratrix of the Estate of Gracie Altizer, deceased; Allyne Muncey, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 88–3902.**

United States Court of Appeals, Fourth Circuit.

Argued July 7, 1988.

Decided Sept. 14, 1988.

Michael Fielding Gibson (Johnston, Holroyd & Gibson, Princeton, W.Va., on brief), for plaintiffs-appellants.

Phyllis Jackson Pyles (Jeffrey Axelrad, Torts Branch, Civil Div., U.S. Dept. of Justice, John R. Bolton, Asst. Atty. Gen., Washington, D.C., Michael W. Carey, U.S. Atty., Charleston, W.Va., on brief), for defendant-appellee.

Before WINTER, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.

MURNAGHAN, Circuit Judge:

On October 6, 1986, Plaintiffs/Appellants, Lois Patterson, Administratrix of the Estate of Gracie Altizer, and Allyne Muncy, brought this action against the United States in the United States District Court for the Southern District of West Virginia (Hallanan, J.) pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* On December 16, 1987, the district court dismissed the action for lack of subject matter jurisdiction, finding that the claim was barred by the discretionary function exception, 28 U.S.C. § 2680(a).

### I.

Gracie Altizer and Allyne Muncy resided in the Town of War, West Virginia, in a house built upon a coal refuse pile. In February 1984, a house located approximately twenty yards immediately adjacent to the Altizer home caught fire and burned into the basement, igniting the subterranean refuse pile and emanating smoke and noxious gases.

Altizer and her neighbors allegedly made complaints to the mayor's office and the fire department, as well as to the representatives of the West Virginia Department of Natural Resources and the Federal Office of Surface Mining (OSM). On August 23, 1984, in response to a complaint by Altizer's neighbor, OSM Inspector Rodney Moore inspected the site. Moore was accompanied by James Rose, a surface mine inspector employed by the West Virginia Department of Energy. After Inspector Moore reported in a manner alleged to be negligent to his superiors, it was decided that no emergency situation existed which warranted the expenditure of funds under 30 U.S.C. § 1240 for emergency abatement of dangerous conditions.

The death of Altizer and the injury to Muncy allegedly resulted on March 23, 1985 due to inhalation of smoke and noxious gases emanating from the subterranean fire. The plaintiffs allege that Altizer's death and Muncy's injury were caused by negligent inspections by Inspector Moore. They do not challenge OSM's determination that no emergency situation existed which warranted expenditure of funds.

### II.

The Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), authorizes suits against the United States for damages

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 2680(a) provides an exception to the FTCA. It states that the FTCA shall not apply to

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The primary issue here is whether or not the allegedly negligent act was "discretionary." The statute itself is silent as to what should be regarded as a "discretionary function or duty." However, three Supreme Court cases provide some insight into defining the word "discretionary."

*Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) was a case involving personal and property claims stemming from the explosions of fertilizer with an ammonium nitrate base at Texas City, Texas. The plaintiff alleged that the government acted negligently in drafting and adopting its fertilizer export plan; that numerous phases of the manufacturing process were negligently performed; and that the government negligently failed to police the shipboard loading of the fertilizer. The Supreme Court held that the government's actions were immune from liability under the discretionary function exception to the FTCA. The Court explained that:

It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the "discretionary function or duty"

that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. If it were not so, the protection of § 2680(a) would fail at the time it would be needed, that is, when a subordinate performs or fails to perform a casual step, each action or nonaction being directed by the superior, exercising, perhaps abusing, discretion.

*Id.* at 35–36, 73 S.Ct. at 967–68.

In *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), the Supreme Court explained that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Id.* at 813, 104 S.Ct. at 2764. The Court also noted that the analysis must take into account the underlying basis for the discretionary function exception. *See id.* 813–14, 104 S.Ct. at 2764–65. In *Varig Airlines*, the plaintiffs charged that the Federal Aviation Administration (FAA) was negligent in failing to inspect certain elements of aircraft design before certificating the Boeing 707 and DeHavilland Dove. The Court held that both the FAA's decision to implement the "spot-check" system of compliance review, and the application of that "spot-check" system to the particular aircraft involved were covered under the discretionary function exception to the Act. *Id.* at 819–20, 104 S.Ct. at 2767–68. The Court noted that the FAA employees who executed the "spot-check" inspection program were protected by the discretionary function exception because they were "specifically empowered to make policy judgments regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize com-

pliance with FAA regulations, and the efficient allocation of agency resources." *Id.* at 820, 104 S.Ct. at 2768.

Recently, in *Berkovitz v. United States,* —— U.S. ——, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the Supreme Court re-examined the scope of the discretionary function exception to the Federal Tort Claims Act. In that case, the plaintiffs made the following arguments: 1) National Institutes of Health's Division of Biologic Standards (DBS) negligently issued a license for production of oral polio vaccine without first receiving safety data required by regulation and statute; 2) DBS licensed vaccine despite the vaccine's failure to comply with regulatory safety standards, *id.* at 1960, 1962; and 3) the Bureau of Biologics of the Food and Drug Administration did not comply with its own policy of testing all vaccine lots for compliance with safety standards, *id.* at 1960, 1963–64. The Supreme Court held that the first and third claims were not barred by the discretionary function exception because the implementing officials exercised no independent policy judgment. With regard to the second claim, the Court posited three possibilities:

If petitioners aver that the DBS licensed Orimune either without determining whether the vaccine complied with regulatory standards or after determining that the vaccine failed to comply, the discretionary function exception does not bar the claim. Under the scheme governing the DBS's regulation of polio vaccines, the DBS may not issue a license except upon an examination of the product and a determination that the product complies with all regulatory standards.... The agency has no discretion to deviate from this mandated procedure....

If petitioners' claim is that the DBS made a determination that Orimune complied with regulatory standards, but that the determination was incorrect, the question of the applicability of the discretionary function exception requires a somewhat different analysis. In that event, the question turns on whether the manner and method of determining compliance with the safety standards at issue involves agency judgment of the kind protected by the discretionary function exception.... We therefore leave it to the District Court to decide, if petitioners choose to press this claim, whether agency officials appropriately exercise *policy judgment* in determining that a vaccine product complies with the relevent safety standards.

*Id.* at 1962–63 (citations omitted) (emphasis added).

In the instant case, the field investigator was supposed to conduct an on-site inspection so that his superiors could make the following findings of fact:

Whether

(1) an emergency exists constituting a danger to the public health, safety or general welfare; and

(2) no other person or agency will act expeditiously to restore, reclaim, abate, control or prevent the adverse effects of coal mining practices.

30 U.S.C. § 1240.

An "emergency" is defined as:

a sudden danger or impairment that presents a high probability of substantial physical harm to the health, safety, or general welfare of people before the danger can be abated under normal program operation procedures.

30 C.F.R. § 870.5.

The plaintiffs contend that they are not challenging the techniques promulgated by OSM as negligent or arguing that OSM was negligent in failing to extinguish the gob pile. They contend, however, that Inspector Moore was negligent in inspecting the premises. The plaintiffs argue that the action of Inspector Moore was not covered under the discretionary function exception because they were merely "operational" acts as opposed to "planning" acts.

We believe that the use of the planning level/operational level distinction is, depending on the circumstances, either too simplistic or too complicated and specious. *See Begay v. United States,* 768 F.2d 1059, 1062 n. 2 (9th Cir.1985). Instead, the proper test is whether the challenged acts of a

government employee are of the nature and quality that Congress intended to shield from tort liability. *Variq,* 467 U.S. at 813, 104 S.Ct. at 2764. The key question, therefore, is whether the government employee, regardless of position or rank, is allowed to make independent policy judgments. *See Berkovitz,* 108 S.Ct. at 1963; *see also United States Fidelity & Guar. Co. v. United States,* 837 F.2d 116, 121 (3d Cir.1988) ("Acts at the operational level may be discretionary if planning level orders anticipate decisions at lower levels that *leave room for policy judgment and decision.*") (emphasis added), *cert. denied,* — U.S. ——, 108 S.Ct. 2902, 101 L.Ed.2d 935 (1988); *Aslakson v. United States,* 790 F.2d 688, 693 (8th Cir.1986) ("Where the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations, the rationale for the exception falls away and the United States will be held responsible for the negligence of its employees."); *Alabama Elec. Coop., Inc. v. United States,* 769 F.2d 1523, 1531 (11th Cir.1985) (where no social, economic, or political policy is involved in the decision-making, design decisions are subject to judicial review under the state tort law standards that would normally govern an action for engineering malpractice).

■ In the present case, Inspector Moore did not have authorization to make policy decisions. Indeed, OSM field inspectors are discouraged even from making recommendations as to the final disposition of the complaint. The Standard Operating Procedure explicitly states that the investigation report "should not contain any recommendations or conclusions with respect to the suggested disposition of the complaint." Inspector Moore was authorized merely to make the following findings:

1. If the problem has been previously investigated, whether further investigation is needed;
2. Determine the extent of problem;
3. Is the problem mining related;
4. Does the problem represent a hazardous situation?

Although such determinations inevitably require some decision-making on the part of an OSM field investigator, the type of discretion is not of the nature and quality that Congress intended to shield from tort liability. *See Drake Towing Co. v. Meisner Marine Constr. Co.,* 765 F.2d 1060, 1064 (11th Cir.1985) ("For the government to show merely that some choice was involved in the decision making process is insufficient to activate the discretionary function exception."). Because OSM field investigators are not authorized to exercise discretion in making policy judgments, the discretionary function exception is not applicable to the instant case. Therefore, the district court erred in dismissing the plaintiffs' complaint under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

While we reverse the district court's dismissal and remand the case for further proceedings, we do acknowledge that the plaintiffs may carry a heavy burden in proving proximate causation in light of agency discretion. If the trier of fact finds that it was not Inspector Moore's alleged inadequate work, but OSM's decision not to declare the site an emergency that was the proximate cause of death and injury, success by the plaintiffs on the merits will be foreclosed. However, the agency's discretion in spending money or declaring emergencies does not provide blanket protection for all lower-level ministerial acts leading up to the agency's decision.

For the foregoing reasons, the decision of the district court is reversed.

REVERSED.