**Dennis HURST and Joyce Hurst, Appellants,**

v.

**UNITED STATES of America and Don Hight, Appellees.**

No. 88–5385.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1989.

Decided Aug. 9, 1989.

See also, D.C., 123 F.R.D. 319.

Mike Abourezk, Gregory, S.D., for appellants.

Charles M. Thompson, Pierre, S.D. and Philip N. Hogen, Sioux Falls, S.D., for appellees.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Appellants Dennis and Joyce Hurst brought this action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) (1982), and a pendent state-law claim against Don Hight. The Hursts alleged that, under the supervision of the Army Corps of Engineers, Hight negligently constructed two jetties in a river channel that caused severe flooding on the Hursts' property. After a joint bench and jury trial, the jury found Hight not liable on the state claim, and the district court thereafter made findings and dismissed the action against the United States as barred by the discretionary function exception of the FTCA. 28 U.S.C. § 2680(a).

On appeal, the Hursts raise the following arguments for reversal: (1) the Corps' own regulations created a nondiscretionary duty to issue a prohibitory order when a Corps inspector discovered early in construction that Hight was violating his permit for the project; (2) the Corps voluntarily undertook a nondiscretionary obligation to enforce the terms of the permit; (3) the Corps violated its own regulations by accepting an after-the-fact permit for the completed project when Hight had failed to perform required remedial work; and (4) as to the claim against Hight, the district court erroneously admitted expert and lay opinion testimony about the cause of the flood.

For the reasons set forth below, we reverse the dismissal of the FTCA action and remand for findings on the claim that the Corps caused the Hursts' damages by negligently failing to issue a prohibitory order. We reject on the merits the allegations of trial error in the Hursts' claim against Hight.

## I. BACKGROUND

On April 20, 1984, the Army Corps of Engineers issued a permit to Don Hight to build two jetties about thirty feet into the White River near Murdo, South Dakota. The permit also authorized Hight to reroute the river by excavating a channel through a sandbar on the southern bank. Hight intended the jetties to prevent erosion on his ranch on the northern bank.

Dennis and Joyce Hurst own a ranch on the southern bank of the river, about one mile upstream from the Hight property. The Hursts objected to the jetty project from the start, claiming that the jetties would increase the risk of erosion and flooding on their property. Almost immediately after Hight commenced construction of the jetties in the fall of 1984, Dennis

Hurst began writing and calling Corps personnel to inform them that Hight was completing work beyond that authorized in the permit.

Prompted by Hurst's complaints, Corps compliance inspector James Suedkamp visited the site on October 1, 1984. By this time, Hight had completed the upstream jetty and had just begun work on the second jetty. In his report to the Corps' Omaha office, Suedkamp noted that the work completed and planned by Hight did not correspond with the specifications of the permit.

The Corps took no further action until it inspected the project again on November 19 and December 5, 1984, discovering the following permit violations: (1) the second jetty was constructed 460 feet downstream of the first jetty instead of 1400 feet as authorized; (2) the second jetty was 224 feet long (from the high bank) instead of 155 feet as authorized; (3) a 240–foot–long temporary access road to the sandbar across the river had not been removed and was acting as an extension of the second jetty; and (4) the channel excavation in the southern sandbar was about 1050 feet long and twenty-four feet wide instead of 400 feet by 100 feet as authorized.

The Corps ordered Hight to remove the access road, but informed him that he could apply for an after-the-fact permit for the other unauthorized work. After finding that Hight had substantially removed the access road, the Corps issued an amended permit on May 30, 1986.

In February and March of 1986, serious flooding occurred on the Hurst property just upstream from the jetties. The Hursts filed this suit, alleging that an ice jam at the second jetty caused the flood and the resulting $402,281.97 in damages to their property. They claimed that the flood would not have occurred but for Hight's negligence in constructing the jetties and the Corps' negligent supervision of the project. After an adverse judgment in the district court, the Hursts appealed.

## II. DISCUSSION

### A. Discretionary Function Exception

The FTCA waives the sovereign immunity of the United States to permit suits for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b) (1982). The Act creates an exception to this waiver of immunity, however, for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

Conduct cannot be discretionary unless it involves an element of policy judgment or choice on the part of the agency or employee. *See Dalehite v. United States,* 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953). Thus, the discretionary function exception does not apply "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). An appellate court reviews *de novo* the dismissal of a case under the discretionary function exception. *McMichael v. United States,* 856 F.2d 1026, 1031 (8th Cir.1988).

In this case, the Hursts initially contend that the Corps' own regulations created a nondiscretionary duty to enforce Hight's permit in a manner more stringently than it did, and that this failure to follow mandatory regulations renders the Corps' conduct actionable under the FTCA. We agree.[1]

---

1. During oral argument, the question arose whether the jury's verdict in favor of Hight collaterally estops the Hursts' FTCA claim against the Government. We conclude that it does not. The verdict form submitted the following question to the jury: "Was the conduct of defendant Hight a proximate cause of any damage to the property of the plaintiffs?" The jury's negative response to this question does not necessarily reflect a finding that the jetties did not cause the flood. Throughout the trial, Hight's attorney argued the alternative theory

Under section 404 of the Federal Water Pollution Control Act (FWPCA), any party wishing to discharge dredged or fill material into navigable waters in a manner that may impair the flow of those waters must obtain a permit from the Corps. 33 U.S.C. § 1344(f)(2) (1982). The FWPCA also provides that when the Secretary of the Army discovers a permit violation, he or she shall issue an order requiring compliance or shall bring a civil action. 33 U.S.C. § 1344(s)(1).

The implementing regulations for section 404 in effect during construction of the Hight project provided in part:

> When the district engineer becomes aware of any unauthorized activity *still in progress*, including a violation of the terms and conditions of an authorized activity, *he shall immediately issue an order prohibiting further work* to all persons responsible for and/or involved in the performance of the activity and may order interim protective work. If the unauthorized activity has been completed, he will advise the responsible party of his discovery.

33 C.F.R. § 326.2(a) (1984) (emphasis added).[2] By its express terms, section 326.2(a) at that time imposed upon the Corps a nondiscretionary duty to issue a prohibitory order to Hight if the district engineer discovered a permit violation while the jetty project was still in progress.[3] The term "shall immediately" stressed the urgency and mandatory nature of stopping the unauthorized activity before further violations occurred. This language stood in stark contrast to the last clause of the same sentence, which stated that the Corps *"may* order protective work." *Id.* (empha-

sis added). In addition, although other subparts of section 326 apparently granted the Corps wide discretion in handling permit violations,[4] those provisions did not refer to discovery of unauthorized work still in progress. The same urgency simply does not exist when the work already is completed.

We also note that in *Lather v. Beadle County*, 879 F.2d 365, 368 (8th Cir.1989), this court recently observed that the discretionary function exception protects only governmental decisions that involve balancing of policy considerations. *See also United States v. Articles of Drug*, 825 F.2d 1238, 1249 (8th Cir.1987); *Georgia Casualty & Sur. Co. v. United States*, 823 F.2d 260, 262 (8th Cir.1987). We further stated that "[w]here only professional, nongovernmental discretion is at issue, the discretionary function exception does not apply." *Lather*, at 368 (citing *Collazo v. United States*, 850 F.2d 1, 3 (1st Cir.1988)). In this case, the express terms of the regulation, not Corps personnel, determined governmental enforcement policy. Thus, based on the express language and context of section 326.2(a) as it stood at the time, we conclude that it created a nondiscretionary enforcement duty.[5]

Ample evidence indicates that Corps employees knew of the permit violations but took no action as required by the regulation. The district court expressly found that Corps compliance inspector James Suedkamp "was aware on October 1, 1984 that Hight was planning work on jetty # 2 that did not comply with the terms of the permit." *Hurst v. United States*, No. 87-3018, slip op. at 15 (D.S.D. Aug. 31, 1988). This finding is supported by Suedkamp's

---

that Hight should not be liable because the Corps authorized all of his actions. Thus, the verdict might indicate that the Corps, rather than Hight, caused the flood.

2. The Corps substantially amended its enforcement regulations in 1986. *See infra* note 5.

3. Even compliance inspector James Suedkamp testified that the regulation created a mandatory duty. As the district court noted, "Suedkamp admitted that under Corps guidelines he had no choice but to issue a cease and desist order once he became aware of a violation." *Hurst v. Unit-*

*ed States*, No. 87-3018, slip op. at 16 (D.S.D. Aug. 31, 1988).

4. *See, e.g.*, 33 C.F.R. § 326.5(b) ("Where the district engineer determines that there has been non-compliance with the terms or conditions of a permit, he should first contact the permittee and attempt to resolve the problem.").

5. Significantly, the Corps amended the enforcement regulations in 1986 to remove all nondiscretionary language. This may indicate that the previous language created a mandatory duty.

trial testimony, in which he read from his earlier deposition:

A Your question is as I read from Page 25:

"At what point did you discover that he was not within compliance with the terms of his permit?"

My response was "The first time I went down there."

Q All right. So you discovered he was not complying with his permit the first time you went down there?

A That's what the deposition says, sir.

Q And your first inspection, the first time you went down there was October 1st, 1984?

A Right. (Tr. 481).

Suedkamp relayed this information in a report to the district office in Omaha, which did not issue a prohibitory order as specifically required by section 326.2(a) of the regulations.

The discretionary function exception does not apply to the Hursts' claim based on this alleged negligent failure to comply with mandatory Corps regulations. *Berkovitz,* 108 S.Ct. at 1958; *see also McMichael,* 856 F.2d at 1033 (exception inapplicable when government inspectors failed to follow fifty-one-part Defense Department checklist for enforcing compliance with safety requirements at munitions plant); *National Carriers, Inc. v. United States,* 755 F.2d 675, 677–78 (8th Cir.1985) (claim not barred when government inspector violated regulations requiring condemnation or tagging of contaminated beef).[6] Accordingly, we remand this claim to the district court for findings on the merits. Whether the Corps' failure to issue a prohibitory order constituted actionable negligence remains for determination by the district court.

■ The Hursts also allege that the Corps violated a mandatory regulation by approving Hight's after-the-fact permit. At the time, section 326.3(c) of the regulations provided that the Corps shall accept an application for such a permit only "[u]pon completion of appropriate remedial work" earlier ordered by the Corps under section 326.3(b).

In this case, the Corps issued a remedial order on December 19, 1984, requiring Hight to remove the access road "in its entirety" and deposit the removed materials landward above the high water line. Hight, however, merely cut a small trench through the road and let the upper section wash away, leaving the lower sections in place in the channel. Thus, the Hursts claim that the Corps had no power to award the after-the-fact permit because Hight had failed to complete the ordered remedial work.

We disagree that section 326.3(b) created a nondiscretionary duty to deny Hight's application for a permit. Because the regulations gave the Corps discretion to determine what remedial work was appropriate in this case, common sense dictates that it also possessed discretion to determine that Hight had sufficiently removed the road to comply with the order. Thus, the discretionary function exception bars any claim

---

**6.** In arguing that the statutory and regulatory scheme in this case created no nondiscretionary enforcement duty, the Government relies primarily on *Dubois v. Thomas,* 820 F.2d 943 (8th Cir.1987), and *Harmon Cove Condominium Ass'n v. Marsh,* 815 F.2d 949 (3d Cir.1987). Neither of these cases, however, controls the one at hand.

In *Dubois,* the Eighth Circuit held that section 309(a)(3) of the FWPCA, which contains language almost identical to that of section 404, did not impose a nondiscretionary enforcement duty on the Environmental Protection Agency. Significantly, however, *Dubois* did not involve an implementing regulation like the one here which clarifies and adds to the agency's duties by stating that it "shall *immediately*" take certain action in a well-defined context. 33 C.F.R. § 326.2(a) (1984) (emphasis added).

*Harmon Cove* also does not support the Government's position. In that case, the Third Circuit held only that section 404 of the FWPCA does not limit the Corps' discretion in whether to *find* a violation. 815 F.2d at 952–53. The court expressly declined to decide whether the statute would have required enforcement action if the Corps had in fact discovered a violation, as it did here. *Id.* at 953 n. 5. In addition, although the *Harmon Cove* court did refer briefly to section 404's implementing regulations as authorizing discretionary action, *id.* n. 4, it cited only a section addressing reevaluation of a permit *after completion* of the project.

based on the Corps' approval of Hight's after-the-fact permit.[7]

■ Finally, the Hursts argue that the Corps voluntarily assumed nondiscretionary enforcement duties in two letters to Dennis Hurst from District Engineer William Andrews. Specifically, Andrews assured Hurst in a letter dated January 13, 1984, that the Corps would monitor the Hight project closely. In another letter on December 12, 1984, Andrews promised that the Corps would "take those actions necessary to bring Mr. Hight's activities into compliance with the terms and conditions of his permit." Citing *Indian Towing Co. v. United States*, 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955), the Hursts maintain that the Corps thus exercised its discretion to undertake a mandatory obligation to enforce the Hight permit, and may be sued for violating its duty of due care in performing that obligation.

The district court rejected this theory, stating in part: "In this case, however, the government has not agreed to perform a service beyond merely enforcing the act it is authorized to enforce. The Corps did not undertake to build the Hight jetties or supply plans or engineering assistance to the project." *Hurst*, slip op. at 10–11. We agree with the district court that the Corps' general promises concerning monitoring and supervision of Hight's activities did not create nondiscretionary duties. *Indian Towing* does not apply here.

### B. Admission of Opinion Testimony (Appeal of Hight Judgment)

The Hursts also argue that the district court erred in admitting the opinion testimony of two Government witnesses that the Hight jetties did not cause the flooding of the Hurst property. The admission of opinion testimony is committed to the broad discretion of the trial court. *Kostelecky v. NL Acme Tool/NL Indus.*, 837 F.2d 828, 830 (8th Cir.1988). No abuse of discretion occurred in this case.

■ James Wuebben, a river hydraulics specialist for the Corps, provided expert testimony on the cause of the flood. The Hursts allege that this testimony lacked a factual basis as required by Fed. R.Evid. 703. Specifically, they contend that Wuebben possessed insufficient knowledge of this particular jetty project in that he had visited the site only once, about two years after the flood, and had performed fewer studies on the project than had the plaintiffs' witnesses.

Expert witnesses may give their opinions, even as to the ultimate issue in a case, so long as there are " 'sufficient facts already in evidence or disclosed by the witness as a result of his [or her] investigation to take such [expert opinion] testimony out of the realm of guesswork and speculation.' " *Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 623 (8th Cir.1986) (quoting *Polk v. Ford Motor Co.*, 529 F.2d 259, 271 (8th Cir.), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976)). A trial court should exclude an expert opinion only if it is so fundamentally unsupported that it cannot help the factfinder. *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir.1988).

In this case, Wuebben based his opinion on a visit to the jetty site and on his review of several documents in evidence, including the relevant permits, photographs, internal Corps memoranda, and reports of other engineers. Wuebben also heard the testimony of several prior witnesses. These sources provided a sufficient factual basis for his testimony. Any weaknesses in the factual underpinnings of Wuebben's opinion go to the weight and credibility of his testimony, not to its admissibility. *Id.; Polk*, 529 F.2d at 271. The Hursts fully developed these weaknesses in cross-examination. Thus, the district court did not abuse its discretion in admitting Wuebben's expert testimony.

The district court also permitted Bill Valburg, a private pilot and friend of the

---

**7.** The Hursts also argue that the Corps violated the mandatory requirements of 33 C.F.R. § 326.5 by failing to adequately inspect and monitor the jetty project. We disagree. Section 326.5 provides that "[a]ppropriate inspections should be made on timely occasions." This language creates only a discretionary duty.

Hursts, to testify that he observed the flood from the air and did not believe it was caused by the Hight jetties. The Hursts contend that Valburg, as a lay witness, lacked the knowledge and training necessary to provide a helpful opinion on the scientific question of what caused the flood.

 A lay witness may give an opinion only if it is rationally based on the perception of the witness and would help the factfinder determine a matter in issue. *Hogan v. American Tel. & Tel. Co.,* 812 F.2d 409, 411 (8th Cir.1987) (per curiam); Fed.R.Evid. 701. Before admitting Valburg's opinion testimony in this case, the trial court required an extensive offer of proof, during which Valburg testified about his thirty-nine years of experience in flying over the White River to monitor ice jams and floods. Based on this unique background, we conclude that the district court did not abuse its discretion in ruling that Valburg's lay opinion testimony would help the factfinder decide the causation issue.

## III. CONCLUSION

We reverse the dismissal of the FTCA action and remand for findings on the claim that the Corps caused the Hursts' damages by negligently failing to issue a prohibitory order. We reject the Hursts' claims of trial error and, assuming jurisdiction, affirm the judgment in favor of Hight on the state-law claim.[8]

---

**8.** Following submission of this case, the United States Supreme Court in *Finley v. United States,* — U.S. ——, 109 S.Ct. 2003, 2010, 104 L.Ed.2d 593 (1989), stated that the FTCA extends federal jurisdiction only over claims against the United States and does not permit the exercise of pendent jurisdiction over additional parties as to which no independent basis for jurisdiction exists. *See also Lather v. Beadle County,* 879 F.2d 365, 367–68 (8th Cir.1989).

The jurisdictional issue has not been raised on this appeal. Therefore, we do not address the

---

questions of: (1) whether the *Finley* and *Lather* cases, which mandate dismissal of pendent parties in cases which have not been completely tried before the *Finley* decision, apply to cases like this one in which litigation has been completed in the district court; or (2) whether an independent ground of jurisdiction may exist between the Hursts and defendant Hight. As to the state-law claim against Hight, we only determine that, on the merits, the arguments asserted by the Hursts must fail.