**Gail Merchant IRVING,
Plaintiff, Appellant,**

v.

**UNITED STATES of America,
Defendant, Appellee.**

**No. 89–1365.**

United States Court of Appeals,
First Circuit.

Heard Sept. 15, 1989.

Decided July 25, 1990.

James H. Schulte, with whom Paul R. Cox and Burns, Bryant, Hinchey, Cox & Schulte, P.A., were on brief for plaintiff, appellant.

Phyllis Jackson Pyles, Torts Branch, Civ. Div., Dept. of Justice, with whom Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Richard V. Wiebusch, U.S. Atty., Manchester, N.H., and Jeffrey Axelrad, Torts Branch, Civ. Div., Dept. of Justice,

Washington, D.C., were on brief for the U.S.

Before BOWNES and BREYER, Circuit Judges, and FAIRCHILD,* Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

The plaintiff's suit alleges that she was injured at work because Occupational Safety and Health Administration (OSHA) inspectors twice negligently failed to notice a dangerous condition which was a serious violation of OSHA safety standards. The question on appeal is whether this suit falls within the discretionary function exception to the United States' waiver of sovereign immunity in the Federal Tort Claims Act (FTCA).

## I.

Gail Merchant Irving (then Gail Merchant) worked at the Somersworth Shoe Company plant in Somersworth, New Hampshire. On October 10, 1979, she was operating a hand-powered marking machine. Apparently, after walking to the opposite side of her work bench and bending under it to retrieve something she had dropped, her hair became caught in the unguarded rotating drive shaft of a nearby machine, causing her severe injuries.

Twice prior to Ms. Irving's injury, in 1975 and 1978, OSHA inspectors (also called "compliance officers") had conducted general inspections of the Somersworth Shoe manufacturing plant. While various violations of OSHA standards were noted during these inspections, neither inspector noted any problems with the area around Ms. Irving's work station. Following the accident, OSHA conducted a third inspection, determined that failing to guard the rotating drive shaft which had injured Ms. Irving was a serious violation of OSHA standards, and fined the employer. Ms. Irving claims the dangerous condition had existed for years. Appellant's brief at 4.

Ms. Irving has sued the United States under the FTCA. Her theory is that under similar circumstances, the law of New Hampshire would impose liability upon a person who undertook to inspect the plant for safety and was negligent in failing to observe the danger and bring it to the attention of the employer. *See Corson v. Liberty Mutual Insurance Company*, 110 N.H. 210, 265 A.2d 315 (1970) (insurance company which undertook periodic inspections of workplace of insured could be held liable to injured employee for negligent inspections); Restatement (Second) of Torts § 324A(b) (1965). As part of its defense, the United States relies upon the FTCA's discretionary function exception. 28 U.S.C. § 2680(a).

In 1988, after trial, the district court dismissed the suit. Without reaching the merits, the court decided that the discretionary function exception applied to the OSHA inspections. This decision came shortly before the Supreme Court decided *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). On plaintiff's appeal, this court vacated the dismissal and remanded for further consideration in light of *Berkovitz*. *Irving v. United States*, No. 88–1454 (1st Cir. Dec. 7, 1988) (unpublished order) [867 F.2d 606]. We directed:

> On remand ... the district court should first consider whether, viewing the evidence in the light most favorable to the appellant, its decision to dismiss remains correct after *Berkovitz*. A determination by the district court that its initial decision does not survive *Berkovitz* does not of course preclude a later finding of immunity based upon the court's factual findings. If the district court ultimately finds that the OSHA employees had discretion in conducting their inspection and that the discretion involved considerations of policy, it should grant the government immunity.

*Id.*, slip op. at 3–4. The district court again dismissed the action without analysis of the evidence, citing the then recent decision of the Fifth Circuit, *Galvin v. OSHA*, 860 F.2d 181 (5th Cir.1988). Plaintiff appealed.

---

* Of the Seventh Circuit, sitting by designation.

## II.

■ The FTCA is a broad waiver of sovereign immunity, granting district courts jurisdiction to hear tort suits against the United States for damages caused by its employees acting in the scope of their duties, where the United States, if a private person, would be liable under the law of the place where the tort occurred. 28 U.S.C. §§ 2674; 1346(b). Among the fourteen statutory exceptions to this waiver of immunity is 28 U.S.C. § 2680(a) which exempts

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Section 2680 "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2761, 81 L.Ed.2d 660 (1984). Because § 2680(a) is a limitation on the waiver of sovereign immunity, cases which fall within the discretionary function exception are dismissed for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1346(b); *Wright v. United States*, 719 F.2d 1032, 1034 (9th Cir.1983); *Baird v. United States*, 653 F.2d 437, 440 (10th Cir. 1981), *cert. denied* 454 U.S. 1144, 102 S.Ct. 1004, 71 L.Ed.2d 296 (1982).

■ Two recent unanimous Supreme Court decisions, *Varig Airlines* and *Berkovitz*, in attempting to clarify the scope of § 2680(a), have set forth a number of principles. "[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764. The Supreme Court has emphatically rejected the assertion that "the exception precludes liability for any and all acts arising out of the regulatory programs of federal agencies." *Berkovitz*, 486 U.S. at 538, 108 S.Ct. at 1960. Instead, the inquiry focuses on the permissible range of action available to the government employee allegedly at fault. "In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice *for the acting employee*." *Id.* at 536, 108 S.Ct. at 1958 (emphasis added). "[I]f the act simply does not involve the exercise of [policy] judgment," or if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," § 2680(a) does not apply. *Id.* at 546–47, 536, 108 S.Ct. at 1964, 1958. Even when the challenged action is the product of an employee's permissible use of judgment, a suit is barred only if that judgment "is of the kind that the discretionary function exception was designed to shield. The basis for the discretionary function exception was Congress' desire to 'prevent judicial "second guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id.* at 536–37, 108 S.Ct. at 1959 (quoting *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. at 2764).

*Varig Airlines* involved two lawsuits challenging the Federal Aviation Administration's certification for commercial use of two airplanes which later caught fire in flight. The Court held that the discretionary function exception applied because the two challenged agency actions—the FAA's general decision to spot-check airplane manufacturers' self-inspections rather than fully inspecting every plane, and the spot-check inspectors' specific decisions to certify the two airplanes as safe—were taken within a statutory and regulatory milieu leaving both the agency and its spot-check inspectors room to make policy decisions. 467 U.S. at 819–20, 104 S.Ct. at 2767–68. On the other hand, the Court held that the exception did not apply in *Berkovitz*, a suit challenging the government's licensing of a vaccine lab, and the Food and Drug Administration's approval of a specific batch of vaccine made at that lab—at least insofar

as the plaintiff's complaint alleged that the government employees had failed to follow mandatory statutes, regulations, or agency policy which did not allow for employee choices grounded in policy. 486 U.S. at 539–48, 108 S.Ct. at 1960–61.

### III.

The government emphasizes the broad statement in *Varig Airlines* that "[w]hatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." 467 U.S. at 813–14, 104 S.Ct. at 2764–65. Government's brief at 15. The government in particular points out that one of the two cases consolidated for review in *Varig Airlines* did not just involve the agency's decision on what types of inspection to conduct, but also included allegations that agency inspectors had in fact inspected the airplane, and had done so negligently. *See United Scottish Ins. Co. v. United States*, 614 F.2d 188, 190 (9th Cir.1979). Thus, the government argues, *Varig Airlines* holds that the discretionary function exception bars claims based on the negligence of agency inspectors carrying out inspections.

*Varig Airlines*, viewed in light of the subsequent unanimous decision in *Berkovitz*, does not provide any such broad immunity for negligent agency inspections. First, the government's argument is really just a variant of the one the Supreme Court pointedly rejected in *Berkovitz*—that the United States is immune from suit under the FTCA for injuries caused by the negligent performance of an agency function merely because the inspectors work for a regulatory agency. *Berkovitz*, 486 U.S. at 538, 108 S.Ct. at 1960. Other courts have recently read *Varig Airlines* more narrowly, allowing suits for negligent inspection by government employees. *Ayala v. Joy Mfg. Co.*, 877 F.2d 846 (10th Cir.1989); *Camozzi v. Roland/Miller & Hope Consulting Group*, 866 F.2d 287, 289 (9th Cir. 1989); *McMichael v. United States*, 856 F.2d 1026 (8th Cir.1988). *See Patterson v. United States*, 856 F.2d 670 (4th Cir.1988)

*vacated on reh'g en banc*, 881 F.2d 127 (*see* n. 3, below). *Berkovitz* made clear that the discretionary function exception applies only if the challenged action "is a matter of choice *for the acting employee*" and "if *the action challenged in the case* involves the permissible exercise of policy judgment." 486 U.S. at 536, 537, 108 S.Ct. at 1958, 1959 (emphasis added). Second, while *United Scottish* did include allegations of inspector negligence, the Supreme Court decision in *Varig Airlines* turned on the fact that the FAA inspectors possessed authority to make policy decisions during their spot-check inspections, and that the allegations of negligence involved the deliberate use of this power:

> The FAA employees who conducted compliance reviews of the aircraft involved in this case were specifically empowered to make policy judgments regarding the degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources. In administering the "spot-check" program, these FAA engineers and inspectors necessarily took certain calculated risks, but those risks were encountered for the advancement of a governmental purpose and pursuant to the specific grant of authority in the regulations and operating manuals. Under such circumstances, the FAA's alleged negligence in failing to check certain specific items in the course of certificating a particular aircraft falls squarely within the discretionary function exception of § 2680(a).

467 U.S. at 820, 104 S.Ct. at 2767. This is how the Court in *Berkovitz* chose to read *Varig Airlines:* "[T]he Court held the challenged acts protected from liability because they were within the range of choice accorded by federal policy and law and were the results of policy determinations." 486 U.S. at 538, 108 S.Ct. at 1959. Ms. Irving claims (with some support in the record) that OSHA's policy on "general inspections" kept any similar discretionary authority from the compliance officers. Assuming an ultimate finding to that effect, the result will be controlled by the plain

statement in *Berkovitz* that if an agency's "policy leaves no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the act was negligent or wrongful." *Berkovitz*, 486 U.S. at 546–47, 108 S.Ct. at 1964.

■ Recent cases from other circuits support our conclusion that after *Berkovitz* the proper inquiry must center on the amount of discretion actually held and exercised by the government employee whose actions or omissions are at issue. For example, the Eighth Circuit, relying on *Berkovitz*, has held that while the Defense Department's decision to entrust an explosive manufacturer with the primary responsibility of ensuring that it complied with safety regulations fell within the discretionary function exception, the exception did not apply to claims resulting from the Defense Department inspectors' failure to follow Department policy: "In the case before us, as in *Berkovitz*, the initial discretion granted by the regulations to the Defense Department was broad; the inspectors, however, violated the Department's own policy directives by failing to comply with specific procedures mandated by the Defense Department." *McMichael*, 856 F.2d at 1033.[1]

Similarly, the Tenth Circuit reversed (also explicitly in light of *Berkovitz*) the dismissal of a suit which alleged that a Mine Safety Health Administration (MSHA) inspector had negligently inspected the lighting system of a coal mine. *Ayala*, above. The court concluded that § 2680(a) did not preclude a claim which did not challenge "the initial 'broad discretion' given the MSHA inspectors to regulate mines," but rather claimed the individual inspector provided improper "technical assistance" in violation of federal safety regulations. 877 F.2d at 848–49.[2]

Most recently, the Ninth Circuit noted that the National Park Service's selection of signs *could* be immune from attack under the discretionary function exception, if it "reflect[s] a thoughtful compromise between the need to warn the public of all the associated dangers ... and the relevant aesthetic considerations." *Summers v. United States*, 894 F.2d 325, 328 (9th Cir. 1990). But when the Park Service "failed altogether to consider the danger to barefoot visitors from hot coals at the time it designed the fire-ring sign," this was not "the product of a choice 'rooted in social, economic, or political policy.' " *Id.* (quoting *Arizona Maintenance Co. v. United States*, 864 F.2d 1497, 1504 (9th Cir.1989).

There is nothing in *Dube v. Pittsburgh Corning*, 870 F.2d 790 (1st Cir.1989) or *Ayer v. United States*, 902 F.2d 1038 (1st Cir.1990), recent decisions of this court involving the FTCA, which governs the result in the case before us. We do note the court's statement in *Dube* that where the government is involved in regulating private conduct and protecting the public from danger, "the government's failure to consider whether to undertake a greater level of care generally remains within the

**1.** In contrast, the pre-*Berkovitz* cases cited by the government, holding that claims of negligent inspection are within § 2680(a), did not inquire into the individual inspector's discretionary authority, but rather looked at the agency's discretion concerning inspections as a whole. *See Russell v. United States*, 763 F.2d 786, 787 (10th Cir.1985); *Merklin v. United States*, 788 F.2d 172, 174–75 (3d Cir.1986); *General Public Utilities Corp. v. United States*, 745 F.2d 239, 243–44 (3d Cir.1984), *cert. denied* 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985).

**2.** *See also Camozzi*, above. In *Camozzi*, the United States Postal Service contracted with a general contractor, Roebbelen Co., to construct a post office, but by contract reserved the right to approve Roebbelen's safety plan and make

daily safety inspections. The district court dismissed the suits of two injured construction workers who alleged USPS negligently performed the safety obligations it had not imposed on Roebbelen. The Ninth Circuit reversed, holding that properly characterized, the plaintiffs' suits fell outside § 2680(a): "[P]laintiffs do not contend their injuries arose from the fact USPS contracted with Roebbelen for the performance of safety functions during construction. Plaintiffs also disavow reliance on USPS's approval of Roebbelen's safety plan. They rely ... upon the alleged negligence of USPS in discharging ... [its] authority to police Roebbelen's compliance with safety standards." 866 F.2d at 289.

exception." 870 F.2d at 798. The claim in this case, however, is not that OSHA chose an insufficient level of care in conducting inspections, but that OSHA compliance officers negligently failed to meet the level of care OSHA had set.

## IV.

The Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.*, created OSHA and gave it a broad mandate to improve workplace safety. The Act gives OSHA expansive authority to set mandatory safety and health standards for employers, to inspect workplaces to ensure compliance, and to issue citations and levy penalties for violations of its standards. §§ 651(b)(3); 657; 658. While the agency "shall with reasonable promptness issue a citation to the employer" when it believes a violation of an OSHA standard has occurred, § 658(a), the statute does not mandate where, when, or how OSHA is to conduct the inspections it is authorized to make. Likewise, formal regulations give OSHA Area Directors or inspectors the power to decide where and when to make inspections, and give the individual compliance officers discretion to decide how to conduct the inspections. *See* 29 C.F.R. § 1903.7(a) & (b).

Were the statute and the formal regulations the only standards guiding the compliance officer's conduct, the discretionary function exception would apply. Ms. Irving claims, however, that the record in this case (developed during a full trial on the merits) shows that there was an OSHA policy for the 1975 and 1978 inspections which left the compliance officers with no policy-level discretion. She claims the inspections were "general inspections," and that OSHA policy required the compliance officer to "observe and record any violations of OSHA standards that existed with-

in the four walls of the plant and to do a complete and thorough inspection." Appellant's brief at 3. Missing the violative condition which injured her was not within the inspectors' permissible scope of discretion, she argues, or at least was not the permissible result of a choice founded on economic, social, or political policy. The government, on the other hand, reads the record as proving that the inspectors were charged with no more than making "a walk-through inspection of the plant to document and identify any hazardous condition *which they observed,*" and that in conducting the inspections, the compliance officers were free to exercise considerable policy discretion. Government's brief at 4, 39–45 (emphasis added).

The governing statute and formal regulations give OSHA wide freedom at higher agency levels to make decisions and formulate programs concerning the inspection of workplaces. It does not follow, as the government seems to argue, that an employee who performs an inspection has the type and breadth of discretion which makes the inspection a discretionary function. We think *Berkovitz* requires that a court look at the range of choice the agency delegates to the employee who performs the task in question. *See McMichael,* above (an inspector's discretion to choose among corrective actions when a violation is found is not within the discretionary function exception when the inspector has explicit directions on how to respond to the violation at issue).[3]

The District Court did not analyze the evidence and made no findings concerning OSHA's policy in conducting its "general inspections," the degree of discretion allowed the compliance officers, or whether such discretion as existed was grounded in social, economic or political policy. In-

---

**3.** *Cf. Patterson v. United States,* 856 F.2d 670 (4th Cir.1988). In *Patterson,* the plaintiffs alleged that an Office of Surface Mining (OSM) field inspector had negligently inspected an underground fire near their home. The original Fourth Circuit panel held the discretionary function exception did not apply because under OSM "Standard Operating Procedure," the field inspector had no policy-making authority con-

cerning what to do during the inspection. On rehearing, the full court held that even though the inspector may have gone outside his mandatory instructions in making the inspection, the OSM still retained, and used, policy-level discretion when it decided that the fire did not present an emergency situation requiring the expenditure of money. *Patterson v. United States,* 881 F.2d 127, 128 (4th Cir.1989).

stead, the court simply relied upon the Fifth Circuit's decision in *Galvin,* which asserted that the discretionary function exception would have prevented the court from hearing a suit against the United States for OSHA's alleged failure to inspect or negligent failure to detect a dangerous condition, notwithstanding *Berkovitz,* because OSHA itself had violated no mandatory statute or regulation. 860 F.2d at 185. But unlike this case, there was apparently no argument in *Galvin* (or the other cases relied on by the district court [4]) that an agency policy imposed a standard with which the inspectors negligently failed to comply. For this same reason, Ms. Irving's complaint differs from the one other case decided after *Berkovitz* which has held OSHA inspections protected by § 2680(a), *Judy v. U.S. Dept. of Labor,* 864 F.2d 83, 84 (8th Cir.1988).

It seems clear from the record on appeal that the compliance officers were under certain mandatory directions. By regulation, they were required informally to advise the employer at the end of the inspection of any apparent safety or health violations discovered, and to inform the affected employees and employer "[w]henever and as soon as" the compliance officer concluded that an imminent danger from an unsafe condition exists. 29 C.F.R. § 1903.13. It had already been decided that the Somersworth shoe factory was to be given a "general inspection." But the parties dispute both how much discretion the OSHA compliance officers retained in deciding whether or not to call a condition a violation, and in how thoroughly they were required and able to do the inspection.

The record contains OSHA's Field Operating Manual for 1981.[5] The Manual says that a compliance officer's "primary responsibility is the conduct of effective inspections to determine whether employers are: (1) complying with safety … standards and regulations … and (2) furnishing places of employment free from recognized hazards that are causing or are likely to cause death or serious physical harm to their employees." Field Operating Manual at V–1. While the Manual goes on to say that "the conduct of effective inspections requires identification, professional evaluation, and accurate reporting of safety and health conditions and practices," it also says "Inspections may vary considerably in scope and detail, depending upon the circumstances in each case." *Id.*

It does seem undisputed that the compliance officers were required by OSHA to inspect the entire Somersworth Shoe plant; they could not choose simply to spot check certain areas. Richard Amirault, the OSHA Area Director in New Hampshire, testified that "As far as humanly possible, [the compliance officers] were supposed to cover the work place," to "look at every operation," and "to observe any place where an employee works." Tr. at 25, 30.[6]

Mr. Amirault repeatedly testified that the compliance officers were required only to report the violations they saw—"If we could spot the unsafe condition, it should be cited,"—which seems to imply the inspectors were under no mandate to find all violations. Tr. at 88–89. *See also* Tr. at 28, 55. But he also testified that the inspectors "should be observing and documenting any violative condition." *Id.* at 30. The inspectors "were supposed to make a complete walk-through and identify and document any hazardous conditions that they would see." *Id.* at 28. A lot of the decisions whether or not a condition violated an OSHA standard were "judgment calls." *Id.* at 31. The compliance officer who actually conducted the 1975 inspection of the Somersworth Shoe plant testified that "I made a complete inspection of the facility *as I am required to do* and made notes, et cetera, of everything that I

---

4. *Cunningham v. United States,* 786 F.2d 1445 (9th Cir.1986); *Cordeiro v. Brock,* 698 F.Supp 373 (D.Mass.1988); *Silva v. Brock,* 677 F.Supp. 55 (D.Mass.1988).

5. The manual in evidence contains revised language. The government has not told us whether the revisions are significant, or how the earlier version(s) in use in 1975 and 1978 read.

6. All references to the transcript are to that for February 12, 1985.

observed." Tr. at 133–34 (emphasis added). He also said that if in 1975 the machine was the same as it was when Ms. Irving was injured, there was "no way" he would have missed the violation. *Id.* at 110–13. The inference could be drawn that rather than being a judgment call, a violation of the type which caused Ms. Irving's injury was so obvious that failure to report it was not within a compliance officer's discretion. (A different inference could also be drawn, *i.e.*, that the violation at issue was not present at the time of the 1975 inspection—which goes to the merits of Ms. Irving's claim.)

In addition, the record does not indicate how much time the compliance officers had available to conduct their inspections. While there is nothing in the record to suggest that the failure to report this particular violation resulted from time constraints, the rationing of limited inspection resources is an important discretionary function, and hence a decision to limit time for inspection would have to be taken into account in at least two ways. First, any statement of policy to the effect that compliance officers should make "complete" or "effective" inspections must be read in light of any limitation on the limited time available to conduct such inspections. The more rigid the time constraints imposed on inspectors, the more likely they will be forced to exercise discretion with respect to the thoroughness of the inspections. Second, if the merits be reached, any inquiry into whether the officer was negligent in failing to discover a violation must consider the standard of reasonable care in the context of a policy decision to limit the time available to inspect. In this case, the 1975 inspection took from 8:00 a.m. to 3:00 p.m., but the record does not show who decided how long the inspection would take, and on what grounds. Tr. at 143. The record does not show how long the 1978 inspection took.

■ Thus, an issue of fact lingers in the evidence of record: whether OSHA policy left the thoroughness of inspections a matter of choice for its compliance officers. There is some evidence, viewed in the light most favorable to the plaintiff, that the thoroughness of inspections was not left up to the individual compliance officers, and that the compliance officers did not have policy-level discretion to fail to note and tell the employer about the violation which allegedly was the cause of Ms. Irving's injuries. The district court should have made findings resolving this issue, in conformity with the directions of this court on the earlier appeal. Accordingly, the judgment appealed from is vacated, and the case remanded for proceedings consistent with this opinion.