UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT

No. 94-1848

GAIL MERCHANT IRVING,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Shane Devine, Senior U.S. District Judge]

Before

Selya, Circuit Judge,
Bownes, Senior Circuit Judge,
and Stahl, Circuit Judge.

Paul R. Cox, with whom Jennifer A. Rosenfeld and Burns, Bryant,
Hinchey, Cox & Rockefeller, P.A. were on brief for appellant.
Phyllis Jackson Pyles, Assistant Director, Torts Branch, Civil
Division, Department of Justice, with whom Paul M. Gagnon, United
States Attorney, Frank Hunger, Assistant Attorney General, and Jeffrey
Axelrad, Director, Torts Branch, Civil Division, Department of
Justice, were on brief for appellee.

March 16, 1995


BOWNES, Senior Circuit Judge. This appeal requires BOWNES, Senior Circuit Judge.

us to decide, for a third time, whether the district court

correctly decided this Federal Tort Claims Act ("FTCA") suit

in favor of the government. Once again, we are of the

opinion that the district court's ruling is not sustainable.

We therefore vacate the judgment and remand this matter for

further proceedings. We also direct that the proceedings

take place before a different district court judge.

I. I.

On October 10, 1979, while working at the

Somersworth Shoe Company plant in Somersworth, New Hampshire,

plaintiff-appellant Gail Merchant Irving sustained severe

injuries when her hair became entangled in the unguarded

rotating shaft of a die-out machine located next to her work

station. The accident occurred when plaintiff bent over to

pick up a glove she had dropped near the machine.

On October 7, 1981, plaintiff filed suit against

the United States under the FTCA. She claimed that

inspectors from the Occupational Safety and Health

Administration ("OSHA") had twice negligently failed to

notice a dangerous condition which was an undisputedly

serious violation of OSHA safety standards -- i.e., that the

rotating shaft on the die-out machine was unguarded. Her

theory of liability was that Somersworth would have corrected

the dangerous condition prior to her accident had it been

-2- 2

given notice of the violation during either of the two

inspections. The inspections at issue took place in 1975 and

1978.

From the beginning, the government has argued that

the district court lacked subject matter jurisdiction over

this case because the actions of the OSHA inspectors were

protected by the "discretionary function" exception to the

FTCA's waiver of sovereign immunity. See 28 U.S.C. 

2680(a); see also Irving v. United States, 909 F.2d 598, 600

(1st Cir. 1990) (because discretionary function exception

effectively reinstates sovereign immunity, cases falling

within it are dismissed for lack of subject matter

jurisdiction) ("Irving I"). Section 2680(a) exempts from the

FTCA's waiver

Any claim based upon an act or
omission of an employee of the
Government, exercising due care, in the
execution of a statute or regulation,
whether or not such statute or regulation
be valid, or based upon the exercise or
performance or the failure to exercise or
perform a discretionary function or duty
on the part of a federal agency or an
employee of the Government, whether or
not the discretion involved be abused.

The government's initial challenge to the district

court's subject matter jurisdiction was presented in a motion

to dismiss. On February 22, 1982, the court denied the

motion. See 532 F. Supp. 840 (D.N.H. 1982). Prior to trial,

but after the Supreme Court handed down an opinion

-3- 3

elaborating upon the scope of the discretionary function

exception, see United States v. Varig Airlines, 467 U.S. 797

(1984), the government renewed its motion to dismiss. On

August 8, 1984, the district court denied this second motion.

A bench trial on the merits of plaintiff's claim

began on February 11, 1985, and concluded on February 14,

1985. For nearly three years, the district court had the

matter under advisement. Finally, on January 27, 1988, the

court dismissed the suit without reaching the merits. The

court, citing intervening circuit authority, reversed its

earlier rulings to the contrary effect and concluded that the

discretionary function exception applied to the OSHA

inspections.

The court's dismissal order came shortly before the

Supreme Court decided Berkovitz v. United States, 486 U.S.

531 (1988). On plaintiff's initial appeal, we vacated the

dismissal and remanded the matter for further consideration

in light of Berkovitz. Irving v. United States, No. 88-1454

(1st Cir. Dec. 7, 1988) (unpublished order). We directed:

On remand . . . the district court
should first consider whether, viewing
the evidence in the light most favorable
to the appellant, its decision to dismiss
remains correct after Berkovitz. A
determination by the district court that
its initial decision does not survive
Berkovitz does not of course preclude a
later finding of immunity based upon the
court's factual findings. If the
district court ultimately finds that the
OSHA employees had discretion in

-4- 4

conducting their inspection and that the
discretion involved considerations of
policy, it should grant the government
immunity.

Id., slip op. at 3-4.

The district court did not follow our instructions.

It did not discuss whether, in light of Berkovitz,

plaintiff's allegations were sufficient to state a claim

falling outside the discretionary function exception. Nor

did it analyze whether plaintiff's proof was sufficient to

sustain her allegations. Instead, the court simply compared

the facts here with the facts of a then-recent, post-

Berkovitz OSHA case in which the Fifth Circuit had found the

discretionary function exception to apply, see Galvin v.

OSHA, 860 F.2d 181 (5th Cir. 1988), and ruled that the suit

was within the scope of the exception.

Plaintiff again appealed, and again prevailed on

appeal. See Irving I, 909 F.2d at 605. We pointed out that,

under Berkovitz, the discretionary function exception applies

"only if the challenged action `is a matter of choice for the

acting employee' and `if the action challenged in the case

involves the permissible exercise of policy judgment.'" Id.

at 601 (quoting Berkovitz, 486 U.S. at 536, 537). Applying

this rule, we first found plaintiff's allegation that OSHA

policy required the inspectors to notice the violation at

issue here adequate to state a claim that the discretionary

function exception did not apply. Id. at 601-03 (analyzing

-5- 5

pertinent case law). We next assessed the evidence and

concluded that it was sufficient for a finding in plaintiff's

favor on the discretionary function question. Id. at 603-05.

We therefore vacated and remanded for a second time. In so

doing, we stated:

[A]n issue of fact lingers in the record:
whether OSHA policy left the thoroughness
of inspections a matter of choice for its
compliance officers. There is some
evidence, viewed in the light most
favorable to the plaintiff, that the
thoroughness of inspections was not left
up to the individual compliance officers,
and that the compliance officers did not
have policy-level discretion to fail to
note and tell the employer about the
violation which allegedly was the cause
of Ms. Irving's injuries. The district
court should have made findings resolving
this issue, in conformity with the
directions of this court on the earlier
appeal.

Id. at 605. Our opinion issued on July 25, 1990.

For nearly four years, the district court did not

respond to the second remand. Finally, on June 27, 1994, the

court issued a memorandum opinion. Once again, the court

declined to follow our mandate. Instead, it addressed the

merits of plaintiff's claim. After reviewing its trial notes

and a partial transcript of the 1985 trial, the court found

that, at the time of the 1975 and 1978 OSHA inspections, the

die-out machine was "some two feet closer to the wall to its

rear" than it was on the day of plaintiff's accident. This

finding led the court to conclude that the offending rotating

-6- 6

shaft was permissibly "guarded by location" -- i.e., that "it

was then in such a location that employees working near it

would not be exposed to injury" -- at the time of the OSHA

inspections. As the court explained, "[The machine's]

nearness to the wall to its rear would prevent access and

probable injury." Accordingly, the court found that no

negligent act or omission on the part of any OSHA employee

occurred during the 1975 and 1978 inspections. In the

court's view, this finding obviated any need to resolve the

discretionary function question. Judgment was entered for

the government.

II. II.

On appeal, plaintiff makes two arguments. First,

she contends that the district court's guarded-by-location

finding is clearly erroneous and/or predicated upon errors of

law. Second, she asserts that "the undue delay of nine and

one-third years between the bench trial and the final

decision on the merits rendered the court's findings of fact

unreliable and also violated the plaintiff's right to access

to the courts, due process, and fundamental fairness as

guaranteed by the United States Constitution." For its part,

the government renews its argument that the actions of the

OSHA inspectors fell within the FTCA's discretionary function

exception.

-7- 7

Because the government's argument puts the district

court's subject matter jurisdiction into issue, we begin with

the last of the three appellate arguments.

A. The Discretionary Function Exception A. The Discretionary Function Exception

It is axiomatic that, "in a multi-panel circuit,

newly constituted panels, generally speaking, are bound by

prior decisions on point." Metcalf & Eddy, Inc. v. Puerto

Rico Aqueduct and Sewer Auth., 991 F.2d 935, 939 n.3 (1st

Cir. 1993). This rule does not apply, however, when the

decision is subsequently undercut by controlling authority --

e.g., a Supreme Court opinion, an en banc opinion of the

circuit court, or a statutory overruling. Metcalf & Eddy,

Inc. v. Puerto Rico Aqueduct and Sewer Auth., 945 F.2d 10, 12

(1st Cir. 1991), rev'd on other grounds, 113 S. Ct. 684

(1993). Nor does it apply in those rare situations "where

newly emergent authority, although not directly controlling,

nevertheless offers a convincing reason for believing that

the earlier panel, in light of the neoteric developments,

would change its course." Id.

The government does not dispute that, under

ordinary circumstances, we would be precluded from

reexamining whether the discretionary function exception

applies here. After all, the panel in Irving I gave the

question careful and exhaustive consideration, and concluded

that it could not be resolved without further fact finding.

-8- 8

Irving I, 909 F.2d at 605. Instead, the government argues:

(1) that the factual findings made by the district court in

the June 27, 1994 memorandum opinion are sufficient to

resolve the outstanding factual issues noted in Irving I; and

(2) that the Supreme Court's decision in United States v.

Gaubert, 499 U.S. 315 (1991), which was handed down after

Irving I, offers convincing reasons to believe that the panel

in Irving I would have ruled differently had it had the

benefit of the Gaubert opinion. We disagree with both

contentions.

The Irving I panel ruled that the applicability of

the discretionary function exception could not be decided

without findings as to whether OSHA policy left the

thoroughness of inspections a matter of choice for individual

inspectors, and whether the inspectors had policy-level

discretion to fail to note and tell the employer about the

violation which allegedly caused plaintiff's injuries. 909

F.2d at 605. The government relies on certain "findings" in

the district court's June 27, 1994 memorandum opinion. These

findings were: that the OSH Act and its implementing

regulations do not themselves provide standards to guide

inspectors in the exercise of their authority to search; that

there is no statute or regulation requiring OSHA to ensure

that all machines in every workplace are properly guarded;

that the OSHA Field Operations Manual recognizes that

-9- 9

inspections may vary considerably in scope and detail,

depending upon the circumstances in each case; and that it is

a judgment call whether a certain machine is in violation of

OSHA standards. We do not think that these findings address

the concerns noted in Irving I.

The Irving I panel explicitly acknowledged that if

"the statute and the formal regulations [were] the only

standards guiding the compliance officer's conduct, the

discretionary function exception would apply." Id. at 603.

The question in this case, however, revolves around OSHA

policy -- as opposed to the statute and formal regulations --

in 1975 and 1978. Id. The referenced findings in no way

speak to OSHA policy during these two years. Similarly,

while the OSHA Field Operations Manual notes that inspections

may vary considerably in scope and detail, it does not

indicate that the individual inspectors were themselves to

decide on the scope and detail of each inspection. And the

general statement that it is a judgment call whether a

certain machine is in violation of OSHA standards is not,

when read in context, a finding at all. It is, rather, a

reiteration of the testimony of Francis Amirault, who was the

Area Director of OSHA at all times relevant to this

litigation. The Irving I panel was well aware of this

testimony, and did not view it as dispositive. See id. at

604-05. For reasons explained more fully below, we are not

-10- 10

free to revisit this conclusion. See Metcalf & Eddy, 991

F.2d at 939 n.3.

As to the assertion regarding Gaubert, we note that

the government has not attempted to explain how Gaubert

renders Irving I incorrect or obsolete. Ordinarily, this

would lead us to conclude that the argument is waived. See

United States v. Zannino, 895 F.2d 1, 17 (1st Cir.) ("issues

adverted to in a perfunctory manner, unaccompanied by some

effort at developed argumentation, are deemed waived"), cert.

denied, 494 U.S. 1082 (1990). Because the question

implicates the district court's subject matter jurisdiction,

however, we have independently analyzed whether Gaubert

offers a convincing reason for concluding that the Irving I

panel would change its course. See Metcalf & Eddy, 945 F.2d

at 12. We discern no such reason. Gaubert was concerned

primarily with correcting the lower court's misperception

that operational or management decisions cannot be policy

decisions protected by the discretionary function exception.

See 499 U.S. at 325-26. No such misperception is apparent in

Irving I. Moreover, Gaubert explicitly reaffirmed the legal

basis on which the holding in Irving I was constructed: that

"the requirement of judgment or choice is not satisfied if a

`federal statute, regulation, or policy specifically

prescribes a course of action for an employee to follow,'

because `the employee has no rightful option but to adhere to

-11- 11

the directive.'" Gaubert, 499 U.S. at 322 (emphasis

supplied) (quoting Berkovitz, 486 U.S. at 536). Applying

this rule, the panel in Irving I first noted plaintiff's

allegation that OSHA had a policy requiring its inspectors to

notice safety violations within the four walls of the

inspected plant. 909 F.2d at 603. The panel then found that

there was sufficient evidence in the record for a rational

fact finder to credit this allegation, and held that the

discretionary function question could not be answered until

the trial court decided whether or not to credit the

allegation. Id. at 603-05. There is nothing new in Gaubert

that calls this analysis into question. We therefore see no

reason to conclude that the panel would have decided Irving I

any differently had Gaubert been previously issued.

The discretionary function doctrine is fraught with

difficulty, and the Supreme Court or Congress may some day

decide that the analysis in Irving I is incorrect. Unless

and until that day arrives, however, or unless and until we

revisit the question as an en banc court, Irving I remains

binding on all newly constituted panels in this Circuit.

Accordingly, we reject the government's argument that the

discretionary function question can be decided in its favor

without further fact finding.

B. The Guarded-by-Location Finding B. The Guarded-by-Location Finding

-12- 12

In reviewing a factual finding made by a district

judge in connection with a bench trial, we almost always

apply the clear-error standard of review. See Fed. R. Civ.

P. 52(a). Under this standard, we give the finding effect

unless we are "`left with the definite and firm conviction

that a mistake has been committed.'" Anderson v. City of

Bessemer City, 470 U.S. 564, 573 (1985) (quoting United

States v. United States Gypsum Co., 333 U.S. 364, 395

(1948)). Thus, "[w]here there are two permissible views of

the evidence, the factfinder's choice between them cannot be

clearly erroneous." Id.

Of course, the deference mandated by Rule 52(a) has

its limits. For example, the Rule clearly presumes that a

sustainable finding will be based upon properly admitted

evidence. And the Supreme Court has indicated that if a

reviewing court is firmly convinced that a finding is

mistaken, it should reverse the finding even where there is

evidence to support it. See Anderson, 470 U.S. at 573;

United States Gypsum, 333 U.S. at 395.

Here, the court reached its conclusion that the

rotating shaft of the die-out machine was guarded by location

at the time of the 1975 and 1978 OSHA inspections by

analyzing the inspections separately. With regard to the

1975 inspection, the court's finding was premised on a

subsidiary finding that "[p]rior to the spring of 1977, the

-13- 13

offending machine had been positioned some two feet closer to

the wall to its rear. Between that date and the spring of

1979, it had been moved forward to the position it occupied

at the time of plaintiff's accident." As the basis for so

finding, the court stated: "The evidence as to the prior

location of the `die-out' machine came from the testimony of

Robert [sic]1 Couture." In rejecting plaintiff's request

that it reconsider the finding, the court elaborated:

Although [Couture's] testimony was not
transcribed, the court, as is its custom,
took contemporaneous trial notes of the
testimony of each witness. Mr. Couture's
testimony was therein recorded. In light
of such testimony, the court credited
that testimony over the testimony of Igor
Paul that Mr. Paul was of the opinion
that the machine had not been moved.2



1. The first name of Couture, who was foreman of the stock
fitting room (the room in which the die-out machine was
located) at the time of the 1975 and 1978 inspections, is
Roger.

2. The expert testimony of Paul, which was based upon his
examination of the accident site, was not the only evidence
that the die-out machine's rotating shaft was not guarded by
location at the time of the 1975 inspection. It is
undisputed that, at this time, a rack with die and pattern
slots going down to the floor was positioned against the wall
behind the machine. It also is undisputed that employees
could not access the dies and patterns in these slots if
there were no space between the machine and the rack. This,
of course, gives rise to an inference that, in 1975, there
was an aisle wide enough for one to bend over in between the
machine and the rear wall. The trial court made no mention
of this evidence in its findings of fact.

-14- 14

The transcript of Couture's actual testimony, which has been

provided to this court on appeal, reveals serious errors in

the district court's trial notes.

First, Couture did not testify that the die-out

machine had been moved; he testified that "it might have been

moved." Second, Couture did not testify that the machine had

been moved two feet; he testified that it might have been

moved "one or two feet."3 And third, Couture did not

testify that the machine had been moved between the spring of

1977 and the spring of 1979; he testified that he "really

[did not] remember" when any movement might have taken place.

To be sure, there was evidence in the record

tending to support the district court's finding. This

"evidence," however, was hearsay testimony of OSHA compliance

officer O'Connell regarding statements Couture allegedly made

a few days prior to trial. On redirect examination by

plaintiff's counsel, O'Connell testified that, just before

trial, Couture told him that the machine had been moved two



3. The only evidence in the record that the rotating shaft
would have been guarded by location had it been differently
situated at the time of the inspections came in the form of
testimony by Paul O'Connell, an OSHA compliance officer who
did a post-accident inspection of the plant. O'Connell
testified that the shaft "very likely" would have been
guarded by location if the bench upon which the die-out
machine sat "had been two feet closer" to the wall. There is
no evidence that the shaft would have been guarded by
location if it had been one foot closer to the wall.

-15- 15

feet at some point in the two years preceding the spring of

1979. In light of Couture's testimony at trial (which was

inconsistent with O'Connell's), the probative value of

O'Connell's testimony is open to serious question. And much

more importantly, the district court does not appear to have

relied upon O'Connell's testimony in finding that the

rotating shaft was guarded by location at the time of the

1975 inspection.

In the end, we have little confidence in the trial

court's finding regarding the 1975 inspection. The court

fundamentally misconstrued the testimony upon which it

explicitly and exclusively relied in making the finding.

Moreover, the nine and one-third-year delay between trial and

the finding significantly undercuts the reason for presuming

that the trial court was in a superior position to judge the

demeanor and credibility of the relevant witnesses. Cf.

Williams v. Poulos, 11 F.3d 271, 278 (1st Cir. 1993). Thus,

even though the record evidence is inconclusive as to

location, we set aside the finding that the die-out machine's

rotating shaft was guarded by location at the time of the

1975 inspection.

Having made this determination, we do not need to

decide any of the other issues in this case. This means that

we need not determine whether: (1) the district court's

patently erroneous reliance upon deposition testimony which

-16- 16

had not been read into the record at trial, see Secretary of

Labor v. DeSisto, 929 F.2d 789, 796-97 (1st Cir. 1991)

(documents attached to summary judgment motions are not

evidence unless admitted at trial), requires reversal of the

finding that the rotating shaft was guarded by location in

1978; (2) the court erroneously failed to give plaintiff the

benefit of a favorable state law principle -- i.e., that a

prior or subsequent location "is evidential of a later or

earlier one," see Dube v. Bickford, 31 A.2d 64, 66 (N.H.

1943); or (3) the delay in deciding this case was so

substantial that it deprived plaintiff of her constitutional

rights.

Plaintiff's theory of liability was that

Somersworth would have guarded the rotating shaft had it been

informed of the dangerous condition in 1975 or 1978. The

court rejected this claim on the basis of its findings that

the rotating shaft was, in fact, guarded by location in 1975

and 1978. The defective finding that the shaft was guarded

by location in 1975 was therefore necessary to the court's

entry of judgment in favor of the government. For this

reason alone, the judgment cannot stand.

III. III.

There still remains the question of relief. If

this were an ordinary case, we would remand the matter to the

trial court for further proceedings consistent with our

-17- 17

opinion. Obviously, this has not been an ordinary case for

quite some time. Thus, despite the difficulties inherent in

retrying a case which was tried over ten years ago, and which

arises out of injuries suffered more than fourteen years ago,

we think fundamental fairness dictates that plaintiff be

granted her request for a trial de novo before a different

district court judge. No finding from the previous trial

should be given preclusive effect in the new trial, and the

government is free to renew its argument that the inspectors'

actions fell within the discretionary function exception, as

well as its argument that the machine was guarded by location

during the period when the OSHA inspections occurred. We

commit to the new judge's discretion the question whether to

proceed solely on the current record.

For the reasons stated above, the judgment of the

district court is vacated. This matter is remanded to a vacated remanded

different district court judge for further proceedings

consistent with this opinion. Plaintiff is entitled to her

costs.

-18- 18