Carroll,
March 2, 1943. } No. 3393.

RALPH P. DUBE *v.* CHARLES BICKFORD.

*Cooper, Hall & Grimes (Mr. Grimes* orally), for the plaintiff.

*Harold E. Wescott* (by brief and orally), for the defendant.

BRANCH, J. This case grows out of a collision between an oil truck owned by the plaintiff and a truck hauling logs or piling, owned by the defendant Bickford. Immediately before the collision the cabs of the two trucks passed each other in safety, but a log on the defendant's truck hit the left side of the plaintiff's truck, causing the damage complained of. The plaintiff's truck had by measurement a width of seven feet eight inches. Measurements made by investigating officers after the accident and before the cars had been moved more than a few feet, showed a width of the load on defendant's truck of eight and one-half feet, which is six inches in excess of the legal limit. R. L., *c.* 119, *s.* 38. The defendant contended that, when loaded, the logs did not exceed the legal limit of eight feet and that their excess width after the accident was due entirely to the force of the collision. It appeared that the logs were loaded with the butts forward upon the "bunks" of the truck having a width of

ninety-two inches and held together by chains. These "bunks" were equipped with stake irons at the ends, but no stakes were used to hold the load in place.

The referee found as follows: "While the defendant's driver testified that when the logs were first loaded their width over all was within the legal limit, it is inconceivable that they should retain the same position throughout their journey. They are not smooth like a load of sewer pipe, and any slight change is apt to produce some settling. That fact was recognized in testimony for the defendant. The referee is unable to adopt the view that their extended width is due to the force of the collision entirely; but finds it was due to vibration in transit. This should have been foreseen and avoided. . . . His [defendant's] failure in this respect caused the collision."

The defendant now argues as follows: "The referee recognizes that the extended width was due to some extent from the collision but finds 'it was due to vibration in transit.' It is the defendant's contention that this finding rests only upon speculation and conjecture."

Defendant's exceptions to the denial of his motions for a nonsuit and a directed verdict raise a much broader issue than that here stated, *i.e.*, whether there was any evidence to sustain a verdict for the plaintiff. No specific exception was taken to the finding as to the cause of the excess width of the load and if there was evidence of other causes, than that reported by the referee the exceptions must be overruled.

In justice to the referee, it should be pointed out, however, that his statement, "That fact (that any slight change is apt to produce some settling) was recognized in the testimony for the defendant" appears to be in accordance with the record. Stanley M. Trask, the driver of the defendant's truck, testified on cross-examination as follows: "Q. The chains were pretty tight were they? A. Yes. Q. You say you tightened them especially tight? A. They were tight when I left. Q. So that there was no chance for the load to spread any the way those chains were tightened up? A. There was a chance for them to spread, yes." And again: "Q. And if they did move forward, you don't know whether they moved forward at the time the accident occurred or before or afterwards? A. I don't know." The theory that the logs moved in transit also received support from the testimony of the witness Welch in rebuttal, to the effect that the shape of the load had changed during its movement of four or five miles from the place of the accident to the place where the photographs were taken.

The referee, of course, was not bound to accept the testimony of the defendant and his agent that the logs were originally loaded within the legal limit. The fact that, when measured immediately after the accident, they were in excess of the legal limit, justified a finding that this condition existed before the accident. "When the existence of an object, condition, quality, or tendency at a given time is in issue, the *prior existence* of it is in human experience some indication of its probable persistence or continuance *at a later period*. . . . Similar considerations affect the use of *subsequent existence* as evidence of existence at the time in issue. . . . This general principle that a *prior* or *subsequent* existence is evidential of a later or earlier one has been repeatedly laid down, and has even been spoken of as a presumption." 2 Wig. Ev. *s.* 437. In accordance with this principle, the referee might properly find that the excess width of the load antedated the accident, and was not bound to accept the view of the defendant that its excess width was due to the force of the collision. Whether this condition should have been foreseen and prevented by the defendant was a question of fact in regard to which the finding of the referee is not open to question.

With reference to the alternative contention of the defendant that the collision was unavoidable, it is sufficient to say that the evidence does not compel such a conclusion.

Defendant's other exceptions have not been argued and are understood to be waived.

*Judgment on the verdict.*

All concurred.