USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 94-1848 GAIL MERCHANT IRVING, Plaintiff, Appellant, v. UNITED STATES OF AMERICA, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, Senior U.S. District Judge] __________________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Paul R. Cox, with whom Jennifer A. Rosenfeld and Burns, Bryant, ____________ ______________________ ______________ Hinchey, Cox & Rockefeller, P.A. were on brief for appellant. ________________________________ Phyllis Jackson Pyles, Assistant Director, Torts Branch, Civil ______________________ Division, Department of Justice, with whom Paul M. Gagnon, United ________________ States Attorney, Frank Hunger, Assistant Attorney General, and Jeffrey ____________ _______ Axelrad, Director, Torts Branch, Civil Division, Department of _______ Justice, were on brief for appellee. ____________________ March 16, 1995 ____________________ BOWNES, Senior Circuit Judge. This appeal requires BOWNES, Senior Circuit Judge. ____________________ us to decide, for a third time, whether the district court correctly decided this Federal Tort Claims Act ("FTCA") suit in favor of the government. Once again, we are of the opinion that the district court's ruling is not sustainable. We therefore vacate the judgment and remand this matter for further proceedings. We also direct that the proceedings take place before a different district court judge. I. I. __ On October 10, 1979, while working at the Somersworth Shoe Company plant in Somersworth, New Hampshire, plaintiff-appellant Gail Merchant Irving sustained severe injuries when her hair became entangled in the unguarded rotating shaft of a die-out machine located next to her work station. The accident occurred when plaintiff bent over to pick up a glove she had dropped near the machine. On October 7, 1981, plaintiff filed suit against the United States under the FTCA. She claimed that inspectors from the Occupational Safety and Health Administration ("OSHA") had twice negligently failed to notice a dangerous condition which was an undisputedly serious violation of OSHA safety standards -- i.e., that the rotating shaft on the die-out machine was unguarded. Her theory of liability was that Somersworth would have corrected the dangerous condition prior to her accident had it been -2- 2 given notice of the violation during either of the two ______ inspections. The inspections at issue took place in 1975 and 1978. From the beginning, the government has argued that the district court lacked subject matter jurisdiction over this case because the actions of the OSHA inspectors were protected by the "discretionary function" exception to the FTCA's waiver of sovereign immunity. See 28 U.S.C.  ___ 2680(a); see also Irving v. United States, 909 F.2d 598, 600 ___ ____ ______ _____________ (1st Cir. 1990) (because discretionary function exception effectively reinstates sovereign immunity, cases falling within it are dismissed for lack of subject matter jurisdiction) ("Irving I"). Section 2680(a) exempts from the ______ FTCA's waiver Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. The government's initial challenge to the district court's subject matter jurisdiction was presented in a motion to dismiss. On February 22, 1982, the court denied the motion. See 532 F. Supp. 840 (D.N.H. 1982). Prior to trial, ___ but after the Supreme Court handed down an opinion -3- 3 elaborating upon the scope of the discretionary function exception, see United States v. Varig Airlines, 467 U.S. 797 ___ _____________ ______________ (1984), the government renewed its motion to dismiss. On August 8, 1984, the district court denied this second motion. A bench trial on the merits of plaintiff's claim began on February 11, 1985, and concluded on February 14, 1985. For nearly three years, the district court had the matter under advisement. Finally, on January 27, 1988, the court dismissed the suit without reaching the merits. The court, citing intervening circuit authority, reversed its earlier rulings to the contrary effect and concluded that the discretionary function exception applied to the OSHA inspections. The court's dismissal order came shortly before the Supreme Court decided Berkovitz v. United States, 486 U.S. _________ _____________ 531 (1988). On plaintiff's initial appeal, we vacated the dismissal and remanded the matter for further consideration in light of Berkovitz. Irving v. United States, No. 88-1454 _________ ______ _____________ (1st Cir. Dec. 7, 1988) (unpublished order). We directed: On remand . . . the district court should first consider whether, viewing the evidence in the light most favorable to the appellant, its decision to dismiss remains correct after Berkovitz. A _________ determination by the district court that its initial decision does not survive Berkovitz does not of course preclude a _________ later finding of immunity based upon the court's factual findings. If the district court ultimately finds that the OSHA employees had discretion in -4- 4 conducting their inspection and that the discretion involved considerations of policy, it should grant the government immunity. Id., slip op. at 3-4. ___ The district court did not follow our instructions. It did not discuss whether, in light of Berkovitz, _________ plaintiff's allegations were sufficient to state a claim falling outside the discretionary function exception. Nor did it analyze whether plaintiff's proof was sufficient to sustain her allegations. Instead, the court simply compared the facts here with the facts of a then-recent, post- Berkovitz OSHA case in which the Fifth Circuit had found the _________ discretionary function exception to apply, see Galvin v. ___ ______ OSHA, 860 F.2d 181 (5th Cir. 1988), and ruled that the suit ____ was within the scope of the exception. Plaintiff again appealed, and again prevailed on appeal. See Irving I, 909 F.2d at 605. We pointed out that, ___ ______ under Berkovitz, the discretionary function exception applies _________ "only if the challenged action `is a matter of choice for the ___ ___ acting employee' and `if the action challenged in the case ______ ________ ___ ______ __________ __ ___ ____ involves the permissible exercise of policy judgment.'" Id. ___ at 601 (quoting Berkovitz, 486 U.S. at 536, 537). Applying _________ this rule, we first found plaintiff's allegation that OSHA policy required the inspectors to notice the violation at ________ issue here adequate to state a claim that the discretionary function exception did not apply. Id. at 601-03 (analyzing ___ -5- 5 pertinent case law). We next assessed the evidence and concluded that it was sufficient for a finding in plaintiff's favor on the discretionary function question. Id. at 603-05. ___ We therefore vacated and remanded for a second time. In so doing, we stated: [A]n issue of fact lingers in the record: whether OSHA policy left the thoroughness of inspections a matter of choice for its compliance officers. There is some evidence, viewed in the light most favorable to the plaintiff, that the thoroughness of inspections was not left up to the individual compliance officers, and that the compliance officers did not have policy-level discretion to fail to note and tell the employer about the violation which allegedly was the cause of Ms. Irving's injuries. The district court should have made findings resolving this issue, in conformity with the directions of this court on the earlier appeal. Id. at 605. Our opinion issued on July 25, 1990. ___ For nearly four years, the district court did not respond to the second remand. Finally, on June 27, 1994, the court issued a memorandum opinion. Once again, the court declined to follow our mandate. Instead, it addressed the merits of plaintiff's claim. After reviewing its trial notes and a partial transcript of the 1985 trial, the court found that, at the time of the 1975 and 1978 OSHA inspections, the die-out machine was "some two feet closer to the wall to its rear" than it was on the day of plaintiff's accident. This finding led the court to conclude that the offending rotating -6- 6 shaft was permissibly "guarded by location" -- i.e., that "it was then in such a location that employees working near it would not be exposed to injury" -- at the time of the OSHA inspections. As the court explained, "[The machine's] nearness to the wall to its rear would prevent access and probable injury." Accordingly, the court found that no negligent act or omission on the part of any OSHA employee occurred during the 1975 and 1978 inspections. In the court's view, this finding obviated any need to resolve the discretionary function question. Judgment was entered for the government. II. II. ___ On appeal, plaintiff makes two arguments. First, she contends that the district court's guarded-by-location finding is clearly erroneous and/or predicated upon errors of law. Second, she asserts that "the undue delay of nine and one-third years between the bench trial and the final decision on the merits rendered the court's findings of fact unreliable and also violated the plaintiff's right to access to the courts, due process, and fundamental fairness as guaranteed by the United States Constitution." For its part, the government renews its argument that the actions of the OSHA inspectors fell within the FTCA's discretionary function exception. -7- 7 Because the government's argument puts the district court's subject matter jurisdiction into issue, we begin with the last of the three appellate arguments. A. The Discretionary Function Exception A. The Discretionary Function Exception ________________________________________ It is axiomatic that, "in a multi-panel circuit, newly constituted panels, generally speaking, are bound by prior decisions on point." Metcalf & Eddy, Inc. v. Puerto _____________________ ______ Rico Aqueduct and Sewer Auth., 991 F.2d 935, 939 n.3 (1st ______________________________ Cir. 1993). This rule does not apply, however, when the decision is subsequently undercut by controlling authority -- e.g., a Supreme Court opinion, an en banc opinion of the __ ____ circuit court, or a statutory overruling. Metcalf & Eddy, ________________ Inc. v. Puerto Rico Aqueduct and Sewer Auth., 945 F.2d 10, 12 ____ ____________________________________ (1st Cir. 1991), rev'd on other grounds, 113 S. Ct. 684 _____ __ _____ _______ (1993). Nor does it apply in those rare situations "where newly emergent authority, although not directly controlling, nevertheless offers a convincing reason for believing that the earlier panel, in light of the neoteric developments, would change its course." Id. ___ The government does not dispute that, under ordinary circumstances, we would be precluded from reexamining whether the discretionary function exception applies here. After all, the panel in Irving I gave the ______ question careful and exhaustive consideration, and concluded that it could not be resolved without further fact finding. -8- 8 Irving I, 909 F.2d at 605. Instead, the government argues: ______ (1) that the factual findings made by the district court in the June 27, 1994 memorandum opinion are sufficient to resolve the outstanding factual issues noted in Irving I; and ______ (2) that the Supreme Court's decision in United States v. ______________ Gaubert, 499 U.S. 315 (1991), which was handed down after _______ Irving I, offers convincing reasons to believe that the panel ______ in Irving I would have ruled differently had it had the ______ benefit of the Gaubert opinion. We disagree with both _______ contentions. The Irving I panel ruled that the applicability of ______ the discretionary function exception could not be decided without findings as to whether OSHA policy left the ______ thoroughness of inspections a matter of choice for individual inspectors, and whether the inspectors had policy-level discretion to fail to note and tell the employer about the violation which allegedly caused plaintiff's injuries. 909 F.2d at 605. The government relies on certain "findings" in the district court's June 27, 1994 memorandum opinion. These findings were: that the OSH Act and its implementing ___ regulations do not themselves provide standards to guide ___________ inspectors in the exercise of their authority to search; that there is no statute or regulation requiring OSHA to ensure _______ __________ that all machines in every workplace are properly guarded; that the OSHA Field Operations Manual recognizes that -9- 9 inspections may vary considerably in scope and detail, depending upon the circumstances in each case; and that it is a judgment call whether a certain machine is in violation of OSHA standards. We do not think that these findings address the concerns noted in Irving I. ______ The Irving I panel explicitly acknowledged that if ______ "the statute and the formal regulations [were] the only standards guiding the compliance officer's conduct, the discretionary function exception would apply." Id. at 603. ___ The question in this case, however, revolves around OSHA policy -- as opposed to the statute and formal regulations -- ______ in 1975 and 1978. Id. The referenced findings in no way ___ speak to OSHA policy during these two years. Similarly, while the OSHA Field Operations Manual notes that inspections may vary considerably in scope and detail, it does not indicate that the individual inspectors were themselves to __________ __________ decide on the scope and detail of each inspection. And the general statement that it is a judgment call whether a certain machine is in violation of OSHA standards is not, when read in context, a finding at all. It is, rather, a reiteration of the testimony of Francis Amirault, who was the Area Director of OSHA at all times relevant to this litigation. The Irving I panel was well aware of this ______ testimony, and did not view it as dispositive. See id. at ___ ___ 604-05. For reasons explained more fully below, we are not -10- 10 free to revisit this conclusion. See Metcalf & Eddy, 991 ___ _______________ F.2d at 939 n.3. As to the assertion regarding Gaubert, we note that _______ the government has not attempted to explain how Gaubert _______ renders Irving I incorrect or obsolete. Ordinarily, this ______ would lead us to conclude that the argument is waived. See ___ United States v. Zannino, 895 F.2d 1, 17 (1st Cir.) ("issues ______________ _______ adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"), cert. _____ denied, 494 U.S. 1082 (1990). Because the question ______ implicates the district court's subject matter jurisdiction, however, we have independently analyzed whether Gaubert _______ offers a convincing reason for concluding that the Irving I ______ panel would change its course. See Metcalf & Eddy, 945 F.2d ___ ______________ at 12. We discern no such reason. Gaubert was concerned _______ primarily with correcting the lower court's misperception that operational or management decisions cannot be policy decisions protected by the discretionary function exception. See 499 U.S. at 325-26. No such misperception is apparent in ___ Irving I. Moreover, Gaubert explicitly reaffirmed the legal ______ _______ __________ basis on which the holding in Irving I was constructed: that ______ "the requirement of judgment or choice is not satisfied if a `federal statute, regulation, or policy specifically ______ prescribes a course of action for an employee to follow,' because `the employee has no rightful option but to adhere to -11- 11 the directive.'" Gaubert, 499 U.S. at 322 (emphasis _______ supplied) (quoting Berkovitz, 486 U.S. at 536). Applying _________ this rule, the panel in Irving I first noted plaintiff's ______ allegation that OSHA had a policy requiring its inspectors to _________ notice safety violations within the four walls of the inspected plant. 909 F.2d at 603. The panel then found that there was sufficient evidence in the record for a rational fact finder to credit this allegation, and held that the discretionary function question could not be answered until the trial court decided whether or not to credit the allegation. Id. at 603-05. There is nothing new in Gaubert ___ _______ that calls this analysis into question. We therefore see no reason to conclude that the panel would have decided Irving I ______ any differently had Gaubert been previously issued. _______ The discretionary function doctrine is fraught with difficulty, and the Supreme Court or Congress may some day decide that the analysis in Irving I is incorrect. Unless ______ and until that day arrives, however, or unless and until we revisit the question as an en banc court, Irving I remains __ ____ ______ binding on all newly constituted panels in this Circuit. Accordingly, we reject the government's argument that the discretionary function question can be decided in its favor without further fact finding. B. The Guarded-by-Location Finding B. The Guarded-by-Location Finding ___________________________________ -12- 12 In reviewing a factual finding made by a district judge in connection with a bench trial, we almost always apply the clear-error standard of review. See Fed. R. Civ. ___ P. 52(a). Under this standard, we give the finding effect unless we are "`left with the definite and firm conviction that a mistake has been committed.'" Anderson v. City of ________ ________ Bessemer City, 470 U.S. 564, 573 (1985) (quoting United ______________ ______ States v. United States Gypsum Co., 333 U.S. 364, 395 ______ ___________________________ (1948)). Thus, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. ___ Of course, the deference mandated by Rule 52(a) has its limits. For example, the Rule clearly presumes that a sustainable finding will be based upon properly admitted evidence. And the Supreme Court has indicated that if a reviewing court is firmly convinced that a finding is mistaken, it should reverse the finding even where there is ____ _____ evidence to support it. See Anderson, 470 U.S. at 573; ___ ________ United States Gypsum, 333 U.S. at 395. ____________________ Here, the court reached its conclusion that the rotating shaft of the die-out machine was guarded by location at the time of the 1975 and 1978 OSHA inspections by analyzing the inspections separately. With regard to the 1975 inspection, the court's finding was premised on a subsidiary finding that "[p]rior to the spring of 1977, the -13- 13 offending machine had been positioned some two feet closer to the wall to its rear. Between that date and the spring of 1979, it had been moved forward to the position it occupied at the time of plaintiff's accident." As the basis for so finding, the court stated: "The evidence as to the prior location of the `die-out' machine came from the testimony of Robert [sic]1 Couture." In rejecting plaintiff's request that it reconsider the finding, the court elaborated: Although [Couture's] testimony was not transcribed, the court, as is its custom, took contemporaneous trial notes of the testimony of each witness. Mr. Couture's testimony was therein recorded. In light of such testimony, the court credited that testimony over the testimony of Igor Paul that Mr. Paul was of the opinion that the machine had not been moved.2  ____________________ 1. The first name of Couture, who was foreman of the stock fitting room (the room in which the die-out machine was located) at the time of the 1975 and 1978 inspections, is Roger. 2. The expert testimony of Paul, which was based upon his examination of the accident site, was not the only evidence that the die-out machine's rotating shaft was not guarded by location at the time of the 1975 inspection. It is undisputed that, at this time, a rack with die and pattern slots going down to the floor was positioned against the wall behind the machine. It also is undisputed that employees could not access the dies and patterns in these slots if there were no space between the machine and the rack. This, of course, gives rise to an inference that, in 1975, there was an aisle wide enough for one to bend over in between the machine and the rear wall. The trial court made no mention of this evidence in its findings of fact. -14- 14 The transcript of Couture's actual testimony, which has been provided to this court on appeal, reveals serious errors in the district court's trial notes. First, Couture did not testify that the die-out machine had been moved; he testified that "it might have been _____ moved." Second, Couture did not testify that the machine had been moved two feet; he testified that it might have been moved "one or two feet."3 And third, Couture did not __ testify that the machine had been moved between the spring of 1977 and the spring of 1979; he testified that he "really [did not] remember" when any movement might have taken place. To be sure, there was evidence in the record tending to support the district court's finding. This "evidence," however, was hearsay testimony of OSHA compliance officer O'Connell regarding statements Couture allegedly made a few days prior to trial. On redirect examination by plaintiff's counsel, O'Connell testified that, just before trial, Couture told him that the machine had been moved two  ____________________ 3. The only evidence in the record that the rotating shaft would have been guarded by location had it been differently situated at the time of the inspections came in the form of testimony by Paul O'Connell, an OSHA compliance officer who did a post-accident inspection of the plant. O'Connell testified that the shaft "very likely" would have been guarded by location if the bench upon which the die-out machine sat "had been two feet closer" to the wall. There is ___ ____ no evidence that the shaft would have been guarded by __ location if it had been one foot closer to the wall. ___ ____ -15- 15 feet at some point in the two years preceding the spring of 1979. In light of Couture's testimony at trial (which was __ _____ inconsistent with O'Connell's), the probative value of O'Connell's testimony is open to serious question. And much more importantly, the district court does not appear to have relied upon O'Connell's testimony in finding that the rotating shaft was guarded by location at the time of the 1975 inspection. In the end, we have little confidence in the trial court's finding regarding the 1975 inspection. The court fundamentally misconstrued the testimony upon which it explicitly and exclusively relied in making the finding. Moreover, the nine and one-third-year delay between trial and the finding significantly undercuts the reason for presuming that the trial court was in a superior position to judge the demeanor and credibility of the relevant witnesses. Cf. ___ Williams v. Poulos, 11 F.3d 271, 278 (1st Cir. 1993). Thus, ________ ______ even though the record evidence is inconclusive as to location, we set aside the finding that the die-out machine's rotating shaft was guarded by location at the time of the 1975 inspection. Having made this determination, we do not need to decide any of the other issues in this case. This means that we need not determine whether: (1) the district court's patently erroneous reliance upon deposition testimony which -16- 16 had not been read into the record at trial, see Secretary of ___ ____________ Labor v. DeSisto, 929 F.2d 789, 796-97 (1st Cir. 1991) _____ _______ (documents attached to summary judgment motions are not evidence unless admitted at trial), requires reversal of the finding that the rotating shaft was guarded by location in 1978; (2) the court erroneously failed to give plaintiff the benefit of a favorable state law principle -- i.e., that a prior or subsequent location "is evidential of a later or earlier one," see Dube v. Bickford, 31 A.2d 64, 66 (N.H. ___ ____ ________ 1943); or (3) the delay in deciding this case was so substantial that it deprived plaintiff of her constitutional rights. Plaintiff's theory of liability was that Somersworth would have guarded the rotating shaft had it been informed of the dangerous condition in 1975 or 1978. The __ court rejected this claim on the basis of its findings that the rotating shaft was, in fact, guarded by location in 1975 and 1978. The defective finding that the shaft was guarded ___ by location in 1975 was therefore necessary to the court's entry of judgment in favor of the government. For this reason alone, the judgment cannot stand. III. III. ____ There still remains the question of relief. If this were an ordinary case, we would remand the matter to the trial court for further proceedings consistent with our -17- 17 opinion. Obviously, this has not been an ordinary case for quite some time. Thus, despite the difficulties inherent in retrying a case which was tried over ten years ago, and which arises out of injuries suffered more than fourteen years ago, we think fundamental fairness dictates that plaintiff be granted her request for a trial de novo before a different __ ____ district court judge. No finding from the previous trial should be given preclusive effect in the new trial, and the government is free to renew its argument that the inspectors' actions fell within the discretionary function exception, as well as its argument that the machine was guarded by location during the period when the OSHA inspections occurred. We commit to the new judge's discretion the question whether to proceed solely on the current record. For the reasons stated above, the judgment of the district court is vacated. This matter is remanded to a vacated remanded _______ ________ different district court judge for further proceedings consistent with this opinion. Plaintiff is entitled to her costs. -18- 18